UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SUSAN L. WILLIAMS, )<br>    )<br>        Plaintiff, )<br>    )<br>    v.            )<br>    )<br>THE ILLINOIS DEPARTMENT OF  )<br>REVENUE, and PAT WELCH, )<br>    )<br>        Defendants. ) | No. 09-3110 |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, Susan L. Williams, an employee of the Illinois Department of Revenue (Department), brings this action against the Department and Pat Welch, one of its managerial employees, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) and 42 U.S.C. § 1983. Plaintiff alleges discrimination based on differential treatment and on a hostile work environment. This matter is now before the Court on Defendants' Motion for Summary Judgment (Motion) (d/e 19). For the reasons that follow, the Motion is GRANTED.

## FACTS PRECEDING THE LAWSUIT

On February 1, 2007, Plaintiff began working as a Liquor Control Agent I

(Agent I) for the Illinois Liquor Control Commission's (Commission) Liquor Control Enforcement Unit (Enforcement Unit). The Commission operates under the Department. The Commission regulates manufacturers, distributors, and retailers of alcohol products. The Enforcement Unit oversees licensees' compliance with the liquor laws and regulations. Agent I's inspect any business who holds a license to sell or distribute alcohol in Illinois to make sure they are in compliance with the Illinois Liquor Control Act. Agent I's also perform special investigations when a complaint is made about a licensee.

Agent I's complete daily inspection reports. An inspection report describes what the agent did during the day, including the time agent left home, the addresses of the licensees visited, and the miles between stops. Inspection reports are turned into the agent's supervisor. During Defendant Welch's tenure with the Department, the practice was that the inspection reports were then sent on to Welch for his review.

As stated, Agent I's also conduct special investigations after a complaint is lodged against a licensee. After conducting a special investigation, the Agent I completes an investigation report which includes the allegations raised and the agent's findings. Special investigation reports are turned in to the agent's supervisor. During Welch's tenure with the Department, the special investigation

reports were reviewed for completeness by the agent's supervisor but were not forwarded to Welch for his review.

Welch was the Assistant Director of the Department from June 25, 2005, until March 15, 2009. As part of his duties, Welch headed the Enforcement Unit of the Commission which had 21 liquor control agents and 4 supervisors. The supervisors in the Enforcement Unit supervised individual agents.

Eric Wisette was one of the four supervisors who worked under Welch. Wisette supervised a group of liquor control agents who were assigned to territory in northern Illinois. Wisette was Plaintiff's supervisor between February 2007 and September 2008.

As Plaintiff's supervisor, one of Wisette's duties was to create Plaintiff's daily assigned schedule. However, in practice, the agents supervised by Wisette would submit their daily itineraries to him for his approval. According to Plaintiff, she followed this practice and informed Wisette of any deviations from her schedule.

Wisette's duties also included reviewing the reports submitted by each agent which detailed, among other things, the time spent on each job. Wisette never noticed any inconsistency in how Plaintiff accounted for her time and her reports generally seemed to be accurate. However, Welch was critical of many of the

reports submitted by Plaintiff to Wisette, particularly Plaintiff's daily activity reports and her time usage.

On several occasions in the summer of 2007, Welch instructed Wisette to assess discipline against Plaintiff based on charges of insubordination.[1]  In August 2007, Welch instructed Wisette not to send Plaintiff on any further investigations and told Plaintiff not to do anymore investigations until further notice.  Welch never gave Wisette similar directions as to any male agents.

Plaintiff signed a Memorandum confirming Wisette had given her an oral reprimand on December 14, 2007.[2]  Welch had instructed Wisette to issue the reprimand for excessive travel.  No other agent working under Wisette had ever been issued such a reprimand.

On January 10, 2008, Plaintiff's December 2007 reprimand was superseded by an oral reprimand given to Plaintiff by Wisette at Welch's direction.[3]  A memorandum from Wisette to Welch confirms that Plaintiff was given the

---

[1] In her Complaint, Plaintiff alleged she received a baseless oral reprimand in August 2007.  However, she later acknowledged she never received that reprimand.

[2] In Plaintiff's Response to Defendants' First Request to Produce, Plaintiff stated "[t]he Plaintiff was not issued an oral reprimand in December of 2007."

[3] Plaintiff's Complaint alleges that in January 2008 the Department issued Plaintiff this reprimand and a one day suspension.  Plaintiff acknowledges she did not receive a one day suspension as a result of this oral reprimand.

reprimand for excessive travel[4] and insubordination[5]. Plaintiff refused to sign the memorandum.

In January 2008, several liquor control agents who had the most wineries within their territory (mostly agents from Southern Illinois), attended a training class where they were trained on conducting winery inspections. Chicago does not have any wineries. Plaintiff was not asked to attend the training. Plaintiff never asked whether she could attend the winery inspection training class.

Welch reevaluated Plaintiff's performance from the time period between August 1, 2007, and February 1, 2008. In doing so, Welch changed the evaluation from "meets expectations" to "needs improvement." The revised evaluation stated that Plaintiff needed improvement in her productivity, initiative, use of time, planning, and follow-up. The evaluation was critical of the way Plaintiff planned her days, deviated from her schedule, used her time, and controlled her workloads.

Plaintiff objected to the revised evaluation for several reasons. First, Plaintiff felt Wisette was in a better position to assess and evaluate the way she performed her duties. Second, Plaintiff felt that the change in rating from "meets

_____

[4] The memorandum indicated Plaintiff traveled to three towns, including her hometown of Elburn, when she was scheduled to be in DeKalb all day, and violated the "one day zip code policy" implemented in July 2007.

[5] The memorandum indicated Plaintiff deviated from the daily schedule without a prior request for revision of the schedule.

expectations" to "needs improvement" in certain performance categories did not fairly assess her performance. Finally, Plaintiff acknowledged that she "[o]ccasionally, but not frequently" has had to "deviate from [her] schedule," but she contended the criticisms of her scheduling were unfair because she had scheduled certain facilities for inspection when she was unclear on their hours of business. She had occasionally scheduled visits with establishments that were not open at the times she had scheduled them for inspection, which then required her to modify her schedule.

In their Memorandum in Support of Motion for Summary Judgment, Defendants state Welch did not accept the supervisor's evaluations for Agent Gedzun (male), Agent Cosentino (male), and Agent Bisluk (female) and also reevaluated those agents' evaluations from "meets expectations" to "needs improvement." Plaintiff disputes this statement other than as it applies to Agent Bisluk. In Welch's deposition, he was asked to identify by name each agent, other than Plaintiff, where he had not accepted the supervisor's evaluations. Welch named Agents Gedzun, Cosentino, and Bisluk and stated that he believed there were one or two others. Plaintiff has not produced any evidence that contradicts this statement.

In January 2008, Welch brought allegations concerning Plaintiff to the

attention of John Chambers, the head of Internal Affairs for the Department. Welch believed Plaintiff had unapproved secondary employment and was involved in political activity. Welch thought Plaintiff's job with the Elburn Police Department had not been approved and that she was working for the police department when she was supposed to be working for the Department. Welch also felt Williams was involved in political activity by working with an organization on de-annexation in Camden Hills. As part of the investigation, Plaintiff's State-issued computer was examined. Plaintiff signed an affidavit admitting she violated the Department's policy for personal use of her State computer.

In September 2008, the Labor Relations Division of the Department, in a "Revised Statement of Charges," charged Plaintiff with the following: (1) using her State-issued computer to generate non-work related email communication and other documents that were sent from and received on her State-issued computer; (2) engaging in political activity during work hours using her State-issued computer; and (3) holding secondary employment as a polygraph examiner without approval.

Plaintiff prepared a written response to the charges. Plaintiff acknowledged using her State computer to a limited extent for personal purposes. Specifically, she acknowledged receiving and sending emails that were not work-related on her

State computer.  This included emails related to the de-annexation of her subdivision and polygraph examinations.  However, Plaintiff stated the second and third charges were "wholly without merit."  According to Plaintiff, she never engaged in outside employment as a polygraph examiner while employed with the Department.  Plaintiff contended that, to the extent her conduct violated Department policies, her discipline should be proportionate to her conduct and, therefore, limited to a written or oral reprimand.

Plaintiff received a 25-day disciplinary suspension.  The suspension was later reduced to 12 days, and she received back wages for 13 days.

## THE LAWSUIT AND RELATED ALLEGATIONS

On May 8, 2009, Plaintiff sued the Department and Welch under §§ 1983 and 2000(e) claiming she was discriminated against based on her gender.  Plaintiff alleged that at all times relevant to the Complaint, Plaintiff worked for the Commission, a division of the Department, as a Liquor Control Special Agent I, and Welch had supervisory authority over her.  Plaintiff further alleged she fully satisfied all reasonable performance and conduct expectations that the Department had for her as an employee.

According to the Complaint, beginning in the summer of 2007 and continuing through the fall of 2008, Plaintiff was subjected to the following

treatment: (1) in the summer of 2007 she was removed from and not allowed to participate in investigations that are normally performed by Liquor Control Special Agents; (2) in August and December 2007 she was issued an oral reprimand with no basis; (3) she was the subject of a baseless investigation undertaken by the Department's Office of Inspector General; (4) in January 2008, the Department issued her an oral reprimand and a 1-day suspension without a proper basis; (5) in January 2008, she was not allowed to attend a winery inspection class which was available to other Liquor Control Special Agents; (6) in April 2008, the Department attempted to rescind an earlier positive performance evaluation done for Plaintiff by her direct supervisor and replace it with a highly critical evaluation which did not correctly reflect her performance; (7) in April 2008, restrictions were placed on her ability to engage in outside employment even though the outside employment would not impede or interfere with her ability to perform her job for the Department; and (8) in September 2008, she was issued a 25-day disciplinary suspension without proper cause. Plaintiff alleged the above-described conduct was initiated, directed, or encouraged by Welch. Moreover, Plaintiff alleged that the treatment she received was different and less favorable than the treatment received by males who worked for the Department as Liquor Control Special Agents. Specifically, during times relevant to this proceeding, the Commission

employed two other female Liquor Control Special Agents and each of them has been treated differently and less favorably than their male counterparts.

Plaintiff's Complaint contained four counts. Count I alleged the Department engaged in a course of conduct which created an offensive and hostile work environment for Plaintiff which has adversely altered and effected the terms of her employment. Moreover, Count I alleged this conduct occurred because of Plaintiff's sex. Therefore, the Department has discriminated against Plaintiff on the basis of her sex in violation of § 2000(e)-2(a).

Count II alleged the Department has discriminated against Plaintiff because of her sex in violation of § 2000(e)-2 because the Department treated Plaintiff differently and less favorably than it treated males who worked for the Department as Liquor Control Special Agents.

Count III alleged that, at all times, Welch was an employee of the Department and acted in furtherance of his capacity as a Deputy Director of the Department and the actions complained of against him occurred under the color of law. Plaintiff alleged Welch treated her differently because of her gender by engaging in the conduct described above. Welch's course of conduct created an offensive and hostile work environment for Plaintiff which adversely altered and affected the terms of her employment. By treating Plaintiff differently than other

employees in the Department because of her sex, Welch violated Plaintiff's right to equal protection of the laws as provided under the Fourteenth Amendment to the Constitution.

Count IV, also against Welch, alleged Welch violated Plaintiff's right to equal protection of the laws as provided under the Fourteenth Amendment to the Constitution by treating Plaintiff differently than other employees of the Department because of her sex.

Following discovery, Defendants moved for summary judgment on Plaintiff's claims. The matter has been fully briefed by the parties. The Court has read the parties' submissions and issues this Opinion.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Williams' claims are based on federal statutes. See 28 U.S.C. § 1331. Personal jurisdiction exists because the Defendants' actions took place in Illinois. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a defendant "'purposefully avail[ed] itself of the privilege of conducting activities'" in the forum state)(quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Venue exists because both Defendants reside in this judicial

district and a substantial part of the events giving rise to Williams' claims occurred in this judicial district.  See 28 U.S.C. §1391(b).

## STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings and submissions in the record indicate the absence of any genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law."  Mercatus Group, LLC v. Lake Forest Hospital, 641 F.3d 834, 839 (7th Cir. 2011).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The movant bears the burden of establishing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 252.

In deciding a motion for summary judgment, a court can only consider sworn statements based on personal knowledge and other evidence that would be admissible at trial under the Federal Rules of Evidence.  Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).  The evidence is viewed in the light most favorable to the non-movant, and "all justifiable

inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. Id.; Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). However, conclusory allegations do not create issues of fact which forestall summary judgment. See Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 740 (7th Cir. 2006) (internal citation omitted) ("it is . . . axiomatic that a plaintiff's conclusory statements do not create an issue of fact").

## ANALYSIS

The Fourteenth Amendment's Equal Protection Clause grants all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity." Harris v. McRae, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). A violation of this constitutional right allows an aggrieved party to seek redress pursuant to 42 U.S.C. § 1983. See Nabozny v. Podlesny, 92 F.3d 446, 453 (7th Cir. 1996). Likewise, Title VII prohibits employers from treating an employee differently on the basis of certain characteristics, including the employee's gender. See 42 U.S.C. § 2000e-2(a)(1). Irrespective of whether a plaintiff asserts a claim under § 1983, 42 U.S.C. § 1981, or Title VII, the same requirements for proving discrimination apply. See

<u>Egonmwan v. Cook County Sheriff's Dept.</u>, 602 F.3d 845, 850, n.7 (7th Cir.) (citations omitted).

## A. Plaintiff's Disparate Treatment Claim

"A plaintiff alleging sex discrimination in employment under Title VII can proceed under either the direct method or the indirect, burden-shifting method of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." <u>Petts v. Rockledge Furniture LLC</u>, 534 F.3d 715, 720 (7th Cir. 2008) (citing <u>Sartor v. Spherion Corp.</u>, 388 F.3d 275, 278 (7th Cir. 2004). Here, Plaintiff has proceeded under both methods.

## 1. Plaintiff's Claim Cannot Succeed Under the Direct Method

In her Memorandum in Opposition to Defendant's Motion for Summary Judgment (Memorandum in Opposition), Plaintiff maintains "a reasonable trier of fact could conclude that [her] sex was at least <u>a</u> factor motivating Welch's treatment of her." <u>See</u> d/e 25 at page 42 (emphasis in original). However, because Plaintiff offers no admissions of discrimination and there is insufficient circumstantial evidence of discrimination, Plaintiff has failed to make out a case under the direct method of proving discrimination.

In order to make out a case of sex discrimination under the direct method, "a plaintiff must provide either direct or circumstantial evidence that supports an

inference of intentional discrimination." <u>Coffman v. Indianapolis Fire Dept.</u>, 578

F.3d 559, 563 (7th Cir. 2009).  Direct evidence consists of either an "outright

admission by the decisionmaker that the challenged action was undertaken because

of the [plaintiff's sex]" or a "convincing mosaic of circumstantial evidence . . . that

point[s] directly to a discriminatory reason for the employer's action." <u>Davis v.

Con-Way Transp. Central Express, Inc.</u>, 368 F.3d 776, 783 (7th Cir. 2004) (internal

quotations and citations omitted).  That circumstantial evidence "must point

directly to a discriminatory reason for the employer's action" (<u>Adams v. Wal-Mart

Stores, Inc.</u>, 324 F.3d 935, 939 (7th Cir. 2003)) and be "directly related to the

employment decision." <u>Venturelli v. ARC Community Service, Inc.</u>, 350 F.3d

592, 602 (7th Cir. 2003) (quotation omitted).  Plaintiff offers no admissions of

discrimination and relies, instead, on circumstantial evidence.

The Seventh Circuit has recognized three different types of circumstantial

evidence of intentional discrimination:  (1) suspicious timing, ambiguous oral or

written statements, behavior toward or comments directed at other employees in

the protected group, and other bits and pieces from which and inference of

discriminatory intent might be drawn;[6] (2) evidence that similarly situated

---

[6] This is the type of evidence the Seventh Circuit has referred to as "a mosaic of
evidence." <u>See</u> <u>Kennedy v. Schoenberg, Fisher & Newman, Ltd.</u>, 140 F.3d 716, 724 (7th Cir.
1998).

employees outside the protected class received systematically better treatment;[7] and (3) evidence that the plaintiff was qualified for the job in question but was passed over in favor of a person outside the protected class and that the employer's stated reason was a pretext for discrimination.[8] <u>Petts v. Rockledge Furniture LLC</u>, 534 F.3d 715, 720-21 (7th Cir. 2008) (citing <u>Hossack v. Floor Covering Assocs. of Joliet, Inc.</u>, 492 F.3d 853, 862 (7th Cir. 2007).

"The mosaic of evidence which permits an inference of discriminatory intent usually consists of evidence of 'ambiguous statements, suspicious timing, discrimination against other employees and other pieces of evidence nonconclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff.'" <u>Kennedy</u>, 140 F.3d at 725 (quotation omitted).  Plaintiff has not identified suspicious timing, ambiguous statements, or any other behavior or comments directed at females from which and inference of discriminatory intent might be drawn.  In fact, Plaintiff has not disputed Defendants' claims that nobody at the Department ever denigrated her because of her gender; she was not aware of any statements by Defendants disparaging her because of her gender; and that she is not aware of any letters or documents that disparage her because of her gender.

---

[7] This is often referred to as "comparative evidence."  <u>Id.</u> at 724-25.

[8] This is often referred to as "pretext evidence." <u>Id.</u> at 725.

Plaintiff's claims of unwarranted criticism and other treatment do not point directly to a discriminatory motivation.  Therefore, Plaintiff has not shown a convincing mosaic of evidence.  See Kennedy, 140 F.3d at 724.

Moreover, this is not a case where Plaintiff was qualified for a job but was passed over in favor of a male and the employer's stated reason was a pretext for discrimination.  Rather, Plaintiff alleges that similarly situated male Liquor Control Agents received systematically better treatment than she received.  As will be discussed below, Plaintiff has not identified any similarly situated male Liquor Control Agents.  Moreover, as will be discussed below, Plaintiff has not produced any evidence that points directly to a discriminatory reason for Defendants' actions.

## 2. Plaintiff Has Not Presented a *Prima Facie* Case of Discrimination Under the Indirect Method

Under the indirect method, Plaintiff must first present a *prima facie* case of discrimination.  To establish a *prima facie* case of gender discrimination and survive summary judgment on her discrimination claim using the indirect method, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably.  Montgomery v. American Airlines, Inc., 626 F.3d

382, 394 (7th Cir. 2010).   A rebuttable presumption of discrimination arises if a plaintiff meets this burden.  See Burks v. Wisconsin Dep't of Trans., 464 F.3d 744, 751 (7th Cir. 2006).  However, if defendants counter with legitimate, non-discriminatory reasons for their actions, a plaintiff then has to show that the defendants' reasons are pretextual.  Id.

Plaintiff, as a female, is a member of a protected class.  See Farrell v. Butler University, 421 F.3d 609, 613 (7th Cir. 2005).  Plaintiff and Defendants disagree on whether Plaintiff was performing her job satisfactorily.  However, most of Plaintiff's claims of unequal treatment have to do with how she was allegedly singled out to receive unfair discipline and reprimands that were not deserved. Plaintiff claims she was singled out because of her gender.  "[W]here the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it 'makes little sense ... to discuss whether she was meeting her employer's reasonable expectations.'"  Curry v. Menard, Inc., 270 F.3d 473, 477 (7th Cir. 2001) (quoting Flores v. Preferred Technical Group, 182 F. 3d 512, 515 (7th Cir. 1999).

Even assuming *arguendo* that Plaintiff is excused from showing she satisfactorily performed her job, Plaintiff must still satisfy the third and fourth prongs of the test outlined in Montgomery in order to make out a *prima facie* case

of discrimination. That means Plaintiff must still show she suffered an adverse

employment action and similarly situated male employees were treated more

favorably.

**a. Adverse Employment Action**

An adverse employment action must "materially alter the terms and

conditions of employment." Stutler v. Ill. Dept. of Corr., 263 F.3d 698, 703 (7th

Cir. 2001). A materially adverse employment action is more than a mere

inconvenience or an alteration of job responsibilities. Rhodes v. Ill. Dep't of

Transp., 359 F.3d 498, 504 (7th Cir. 2004). "While adverse employment actions

extend beyond readily quantifiable losses, not everything that makes an employee

unhappy is an actionable adverse action." O'Neal v. City of Chicago, 392 F.3d

909, 911 (7th Cir. 2004) (quotation omitted). The Seventh Circuit has articulated

three general categories of actionable, materially adverse employment actions:

> (1) cases in which the employee's compensation, fringe benefits, or
> other financial terms of employment are diminished, including
> termination; (2) cases in which a nominally lateral transfer with no
> change in financial terms significantly reduces the employee's career
> prospects by preventing her from using her skills and experience, so
> that the skills are likely to atrophy and her career is likely to be
> stunted; and (3) cases in which the employee is not moved to a
> different job or the skill requirements of her present job altered, but
> the conditions in which she works are changed in a way that subjects
> her to a humiliating, degrading, unsafe, unhealthful, or otherwise
> significantly negative alteration in her workplace environment.

Nichols v. Southern Illinois University-Edwardsville, 510 F.3d 772, 780 (7th Cir. 2007) (quoting O'Neal, 392 F.3d at 911).

As stated, Plaintiff alleges the following treatment received by her is evidence of discrimination. Plaintiff was: (1) removed from and not allowed to participate in investigations that are normally performed by Liquor Control Special Agents; (2) issued an oral reprimand with no basis in August and December 2007 ; (3) the subject of an investigation undertaken by the Department's Office of Inspector General without a legitimate basis ; (4) issued an oral reprimand and a one-day suspension without a proper basis in January 2008; (5) not allowed to attend a winery inspection class which was available to other Liquor Control Special Agents; (6) given a negative performance evaluation by Welch that did not accurately reflect her performance which replaced an earlier positive performance evaluation done for Plaintiff by Wisette; (7) restricted in her ability to engage in outside employment even though the outside employment would not impede or interfere with her ability to perform her job for the Department. According to Plaintiff, this treatment was different and less favorable than the treatment received by male Liquor Control Agents who worked for the Department.

Here, the only employment action that is clearly an adverse employment action is the suspension Plaintiff received. Plaintiff was given a 25-day unpaid

suspension that was ultimately reduced to a 12-day suspension, and Plaintiff was given back wages for 13 of the 25 days served. Plaintiff's unpaid suspension is an adverse employment action. See Whittaker v. Northern Illinois University, 424 F.3d 640, 647 (7th Cir. 2005) (stating a suspension without pay would constitute an adverse employment action).

However, many of the actions about which Plaintiff complains do not constitute adverse employment actions. Plaintiff cannot premise her claim on allegations she was issued oral reprimands with no basis in August and December 2007 or that she was issued an oral reprimand and a 1-day suspension without a proper basis in January 2008. First, Plaintiff has admitted she never received the August 2007 oral reprimand, and that the January 2008 reprimand did not result in a one-day suspension as alleged in the Complaint. A reprimand and a suspension that were never received obviously are not adverse employment actions. Moreover, neither the negative performance evaluation given by Welch nor the December 2007 or January 2008 oral reprimands are adverse employment actions. See Oest v. Ill. Dept. of Corrections, 240 F.3d 605, 613 (7th Cir. 2001) (holding that neither unfavorable performance evaluations nor oral or written reprimands constitute adverse employment actions); see also Grube v. Lau Indus., 257 F.3d 723, 728 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations,

unaccompanied by some tangible job consequence, do not constitute adverse employment actions").

The Court recognizes that it is possible for a reprimand to carry with it immediate, albeit non-economic, consequences that go so far to as materially alter the terms and conditions of employment and that the Seventh Circuit has stated it would perhaps find an action adverse if, for example, the action led to an employee being ineligible "for job benefits like promotion, transfer to a favorable location, or an advantageous  increase in job responsibilities." See Whittaker, 424 F.3d at 648 (quoting Oest, 240 F.3d at 613).  Plaintiff has adduced no such evidence of any similar consequences here.  However, the Court also recognizes that even if the negative performance evaluation and the reprimands standing alone do not constitute discrimination, "they can constitute relevant evidence of discrimination with respect to other employment actions that clearly are adverse employment actions." Oest, 240 F.3d at 613.

Plaintiff likewise cannot premise her claim of discrimination on her allegation that she was not allowed to participate in a winery inspection training class.  "A discriminatory denial of job-related training can constitute an adverse employment action." Durkin v. City of Chicago, 341 F.3d 606, 611 (7th Cir. 2003) (citing Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996).  However,

Plaintiff's contention that she was denied winery inspection training is not supported by the record. Plaintiff never asked to attend the initial training class, and there were plans to have more than just that initial class. Therefore, there is no evidence Plaintiff was denied training.

Moreover, Plaintiff has not presented evidence that training in winery inspections was necessary for her to properly perform her job. See Johnson v. Siemens Building Technologies, No. 05 C 3836, 2007 WL 1017850, at *18 (N.D. Ill. 2007) (where the court did not find an adverse employment action based on denial of training when the plaintiff failed to show that the training at issue was necessary for him to perform his job or that the lack of training jeopardized his chances for promotion, favorable transfer, or advantageous increases in responsibility). Plaintiff was assigned to a group that covered northern Illinois. There are no wineries in Chicago and Plaintiff has not produced evidence there are any wineries in her area. Agent Gedzun testified he believed he was the only Agent from the northern group trained to conduct winery inspections. Regardless of that fact, Plaintiff never asked to have winery inspection training. Further, Plaintiff has not produced evidence that a lack of such training jeopardized her chances for any promotions, favorable transfers, or advantageous increases in responsibility.

Plaintiff has not produced evidence that Defendants discriminated against her by restricting the terms of her secondary employment. That email from Welch to Plaintiff merely reiterated the terms of Plaintiff's secondary employment that had previously been approved. It did not restrict the terms of Plaintiff's secondary employment any further. Moreover, in her deposition, Plaintiff acknowledged she never applied to adjust the hours she had previously been approved to work as secondary employment.

Plaintiff also complains that she was the subject of an investigation that was undertaken without a legitimate basis. Plaintiff was originally investigated, in part, because of accusations she had been working for the Commission on a day when she was also working as a police officer at one of her secondary jobs. The problem with her argument is that "being investigated is not a materially adverse employment action." Garcia v. United Postal Service, 414 Fed.Appx. 855, 858 (7th Cir. 2011). An employer has a right to make sure it is not being fleeced by its employees. Id.

Plaintiff also complains that being removed from and not being allowed to participate in investigations was an adverse employment action. The Seventh Circuit has found a reduction in material responsibilities can be severe enough to constitute an adverse employment action. See, e.g., Dahm v. Flynn, 60 F.3d 253

(7th Cir. 1994) (changing plaintiff's duties from a mix of intellectually stimulating and routine job responsibilities to only routine duties is a "dramatic downward shift in skill level" that "can rise to the level of an adverse employment action"); Collins v. Illinois, 830 F.2d 692 (7th Cir. 1987) (finding adverse employment action where employee was transferred to a position with no specific duties, taken out of her own office and placed at a receptionist-type desk, denied a telephone, removed from professional publications, and no longer given business cards); see also Davis v. Harris, No. 03-3007, 2006 WL 3321630, at *22 (C.D. Ill. 2006) ("A significant reduction in responsibilities can constitute an adverse employment action."). Welch instructed Plaintiff not to perform any more investigations until he notified her further. Welch wanted Plaintiff to focus on doing inspections. No evidence suggests the responsibility of doing inspections was markedly less substantial or less challenging than doing investigations.

Moreover, no evidence suggests that taking the investigation responsibilities away from Plaintiff affected Plaintiff's chances for a promotion or increase in pay. This Court concludes Welch's decision to not have Plaintiff perform investigations until further notice and focus on inspections instead is an adverse employment action.

Finally, this Court notes that in her Memorandum in Opposition to the

Defendants' Motion for Summary Judgment, Plaintiff states that "Defendants' assertions concerning [Plaintiff's] inability to establish that she suffered a materially adverse employment action ignores that both Count I (directed against the Department) and Count III (directed against Welch) of her complaint allege that as a result of Welch's conduct a hostile work environment was created." However, as discussed below, Plaintiff's work environment was not objectively hostile. Therefore, Plaintiff's alleged hostile work environment does not constitute an adverse employment action in this case.

**b. No Evidence A Similarly Situated Male Was Treated More Favorably Than Plaintiff**

Plaintiff cannot establish a *prima facie* case of discrimination under the indirect method because she has not produced evidence that a similarly situated male was treated more favorably than she was. In her response to Defendants' motion for summary judgment, Plaintiff contends she was similarly situated to employees who Defendants treated more favorably than Plaintiff. Plaintiff maintains the best evidence that Welch treated her less favorably than comparable male employees comes from Wisette. Wisette supervised a group of agents, most of whom were males. Plaintiff contends she was similar to these individuals in that they: (1) hold the same position; (2) reported to Wisette; and (3) were comparable in terms of workplace performance and behavior.

In order to meet her burden with respect to showing she was similarly situated to a male who was treated more favorably than she, Plaintiff needed to come forward with evidence that Defendants treated someone who was directly comparable to her "in all material respects" more favorably than they treated her. Peele, 288 F.3d 319, 330 (7th Cir. 2002) (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). To present a "similarly situated co-worker", a plaintiff need not produce a "clone". See Chaney v. Plainfield Healthcare Ctr., 612 F.3d 908, 916 (7th Cir. 2010). In disciplinary cases, a plaintiff must show that the allegedly similar "employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." See Peele, 288 F.3d at 330 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)). The Seventh Circuit has specifically cautioned that in order to establish a coworker as "similarly situated", the coworker must be shown to have a "comparable set of failings." See Haywood v. Lucent Techs., 323 F.3d 524, 529 (7th Cir. 2003).

Plaintiff was asked whether she knew of anybody who was disciplined for using his State computer for personal use. Plaintiff identified Joe Cosentino. Plaintiff stated Cosentino was suspended for 30 days but thought it may have been

reduced.[9]  Plaintiff cannot show she was treated less favorably than Cosentino as

his suspension was longer than her original 25-day suspension.[10]

When asked if she knew of any male employees charged with using their

computer for engaging in political activity,[11] Plaintiff responded that she did not

know of any.  However, when asked whether she knew of any other male

employees charged with engaging in outside employment, Plaintiff identified

Carlos Aulet and Lou Cardigan.  However, both Aulet and Cardigan were internal

affairs investigators, not Liquor Control Agents, and are therefore not similarly

situated to Plaintiff.

Here, Plaintiff was suspended for using her State computer for personal use

and deannexation activities.  The only male Plaintiff has presented who was

suspended for using his State computer for personal use was Cosentino, and

Plaintiff now contends facts relating to Cosentino are immaterial.  Moreover,

Plaintiff has not identified any  other male employees who have been accused of

excessive travel or insubordination.  Therefore, Plaintiff's failure to identify a

[9] In her Memorandum in Opposition to Defendans' Motion for Summary Judgment,
Plaintiff maintains the facts relating to Cosentino's suspension are immaterial because he was
disciplined after the initiation of this lawsuit and after Welch left the Department.

[10] Plaintiff believes Cosentino's original 30-day suspension was reduced but offers no
evidence of what his ultimate suspension was.

[11] Plaintiff objects to the characterization of the deannexation activity as "political
activity" and believes it is more appropriately characterized as "community action."

similarly situated male who was treated more favorably than her prevents her from stating a *prima facie* case.

### 3. Plaintiff Has Not Shown Pretext

Because Plaintiff has failed to establish a *prima facie* case of sex discrimination, the issue of pretext need not be addressed. Nevertheless, for the sake of completeness, the Court shall briefly address this issue.

Even if the Court assumed *arguendo* that Plaintiff has established a *prima facie* case under the indirect method, Plaintiff would still need to show the Defendants' proffered nondiscriminatory reason for its employment decision is a pretext for sex discrimination. " Pretext ... means a lie, specifically a phony reason for some action." Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 348 (7th Cir. 1997) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). To establish pretext, Plaintiff must show Defendants' articulated reasons for their adverse employment actions (1) had no basis in fact; (2) did not actually motivate the actions; or (3) were insufficient to motivate the actions. Hughes v. Brown, 20 F.3d 745, 747 (7th Cir. 1994) (citation omitted). In attempting to show pretext, "[t]he plaintiff must specifically refute the facts which allegedly support the employer's proffered reasons." Collier v. Budd Co., 66 F.3d 886, 893 (7th Cir. 1995) (emphasis added, quotation omitted).

Here, the only clear adverse employment action was Plaintiff's suspension. Plaintiff has admitted she used her State issued computer for personal email and deannexation related activities. Plaintiff also admitted to transmitting materials relating to polygraph examinations on her State computer. Although Plaintiff claims she did the polygraph examinations without compensation and the emails were not sent on State time, Plaintiff has provided no evidence showing that Defendants' motivation for suspending her was anything other than the violations of Department policy she admitted to.

Moreover, to the extent the denial of winery inspection training and the instruction not to perform investigations until further notice are considered adverse employment actions, Plaintiff has failed to show pretext for those actions as well. Defendants maintain that priority for the initial winery inspection training class was given to those agents who would be most likely to conduct winery inspections. Because Plaintiff was an agent in the northern part of Illinois and there were no wineries in Chicago, Plaintiff was not sent to the initial winery inspection training class. Plaintiff has not provided evidence that this articulated reason constitutes pretext.

Further, Plaintiff has not shown that Defendants' proffered reason for instructing her to stop investigations and focus on inspections until further notice

was pretext.  In his deposition, Welch stated that he took this action because Plaintiff "was doing so many investigations that were not in her area that should have been done by other agents that she had fallen behind on doing inspections. Inspections of individual licensees were the main portion of her job description... I wanted her to go back and catch up on a number of licensees that she had not inspected that were on the 12-month non-inspected [list]."  In her deposition, Plaintiff stated she had done just as many inspections as males who received higher evaluations than she received.  However, even if true, this does not address the claim that she was falling behind in her inspections at the time Welch instructed her to stop conduction investigations, *i.e.*, August 2007.  Moreover, no evidence establishes evaluations were based solely on the number of inspections one had performed.  Simply stated, Plaintiff has not shown Welch's reason for instructing Plaintiff to stop investigations until further notice was pretext.

Finally, even assuming that the investigation was an adverse employment action, Plaintiff has not shown that Defendants' legitimate nondiscriminatory reason is pretext.  The record shows the police department for which Plaintiff worked during her secondary employment corresponded with the investigator who was conducting the investigation of Plaintiff.  The correspondence explained that Plaintiff did not work for the police department on the date in question.  A

computer payroll program error showed Plaintiff had worked for the police department on a day when she had in fact not worked.  Additionally, an internal affairs affidavit signed by Agent Gedzun dated April 3, 2008, stated Plaintiff had admitted to running a business as a polygraph examiner and  Plaintiff stated "it was just a couple of times" when discussing the fact an internal affairs investigator had shown her two time-keeping documents indicating she had worked for the police department while on State time.  Investigating an employee accused of such wrongdoing is reasonable under these circumstances.  Plaintiff has not shown Defendants' investigated her for any other reason than they suspected her of engaging in unapproved secondary employment.  Worth noting, during this investigation, Plaintiff's computer was examined and Plaintiff's non-State business activities which were the basis for the revised charges were discovered.

**B. Hostile Work Environment**

In addition to her disparate treatment claims addressed above, Plaintiff contends, in Counts I and III, that the same objectionable conduct violated Plaintiff's Fourteenth Amendment right to equal protection by subjecting her to a hostile work environment.  Count I is directed at the Department and brought under Title VII.  Count III is against Welch and is asserted under § 1983.

"An employer violates Title VII when discrimination based on sex...create[s]

a hostile or abusive work environment." Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998) (internal quotations and citation omitted). "Hostile work environment claims are different from disparate treatment ... claims because the issue is not whether particular acts constitute employment discrimination ..., but whether the overall environment in which [the plaintiff] worked was illegally and [sexually] hostile." Davis v. Harris, No. 03-3007, 2006 WL 3321630, at *28 (C.D. Ill. 2006). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Parkins v. Civil Constructors of Illinois, Inc., 163 F. 3d 1027, 1032 (7th Cir. 1998). The parties do not dispute that Welch was a supervisor with immediate, or successively higher, authority over Plaintiff.

In order to survive summary judgment on a hostile work environment claim, an employee must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating and intimidating, hostile, or offensive working environment that seriously affected the well-being of the plaintiff; and (4) there is a basis for employer liability. See Kriescher v. Fox Hills Golf Resort and Conference Center, 384 F.3d 912, 915 (7th

Cir. 2004). "Harassment is not limited to acts of sexual desire, but rather is a broad term which encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment." Haugerud v. Amery School Dist., 259 F.3d 678, 692 (7th Cir. 2001). To be actionable under Title VII, the hostile work environment must be both objectively and subjectively offensive. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).[12] "In determining whether contested conduct actually creates an objectively hostile work environment, a number of factors may be considered including 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Hilt-Dyson v. City of Chicago, 282 F. 3d 456, 463 (7th Cir. 2002) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). The threshold for plaintiffs is high, as the workplace that is actionable must be one that is "hellish." Smith v. Niles Township High School Dist. 219, 2006 WL 756071, at *6 (N.D. Ill. 2006) (quoting Whittaker, 424 F.3d at 645; but see Jackson v. County of Racine, 474 F.3d 493, 500 (7th Cir. 2005) (stating that in the future counsel should avoid

_____

[12] The Court applies the same standard to Plaintiff's hostile work environment claim brought under §1983 that it applies to a Title VII hostile work environment claim. Williams v. Illinois Dept. of Corrections, 2006 WL 2495020, at *8 (N.D. Ill. 2006) (citing McPhaul v. Board of Commissioners of Madison County, 226 f.3d 558, 567 n. 6 (7th Cir. 2000)).

the use of a single word like "hellish" to "describe the workplace and focus on the question whether a protected group is experiencing abuse in the workplace, on account of their protected characteristic, to the detriment of their job performance or advancement").

    As discussed above, Plaintiff has alleged that several events between the summer of 2007 and the fall of 2008 created a hostile work environment. However, assuming *arguendo* that Plaintiff subjectively believed she worked in a sexually hostile work environment, Plaintiff has failed to present sufficient evidence to show a hostile work environment under the objective test.  The events Plaintiff complains of occurred over a period of more than a year.  The events show no threatening, humiliating, or offensive conduct toward Plaintiff.  Plaintiff has not denied Defendants' assertion that Plaintiff is not aware of: (1) anyone at the Department  making denigrating comments to her because of her gender; (2) any statements made by Defendants that disparage her because of her gender; or (3) any letters or documents that disparage her because of her gender.  Moreover, the events did not unreasonably interfere with Plaintiff's work performance.  Further, Plaintiff had virtually no contact with Welch, only meeting him once.  The evidence adduced at the summary judgment stage shows only two instances where Welch and Plaintiff had direct contact: (1) an email instructing Plaintiff not to do

anymore investigations until further notice and (2) an email reiterating the terms of her secondary employment. Most of Plaintiff's knowledge of Welch's "constant" criticism of her came from Wisette passing along Welch's complaints to Plaintiff. While being informed of unwarranted criticism is no doubt unpleasant, the conduct Plaintiff has alleged is not severe or pervasive enough to constitute a hostile work environment.

## C. Defendants' Other Defenses

Because Defendants are entitled to summary judgment on Plaintiff's claims, this Court need not address Defendants' claims that they are entitled to qualified immunity, Plaintiff's claims are barred as beyond the scope of the EEOC complaint, Plaintiff's claims are time barred, and sovereign immunity bars Plaintiff's claims for equitable relief.

## CONCLUSION

THEREFORE, Defendants' Motion for Summary Judgment (d/e 19) is GRANTED. This case is closed.

IT IS SO ORDERED.

ENTERED: July 20, 2011.

FOR THE COURT:

                      s/ Sue E. Myerscough
                    SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE